[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 672 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 673 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 674 
OPINION
Timothy C. Hobbs, a misdemeanant defendant, has petitioned for a peremptory writ of mandate by which he seeks rescission of an order authorizing prosecutorial discovery that was made subsequent to the passage *Page 675 
of Proposition 115. In his points and authorities, Hobbs attacks the discovery provisions of Proposition 115, claiming they violate the California and federal constitutional guarantees of the right against self-incrimination as well as the federal constitutional rights of due process of law and the assistance of counsel. Hobbs also contends the discovery provisions of Proposition 115 violate the work product doctrine. Finally, Hobbs argues the discovery provisions of Proposition 115 should not apply in misdemeanor cases. We ordered respondent municipal court to show cause why the relief should not be granted.[1]
 FACTS
Hobbs was charged in a felony complaint filed in San Diego Municipal Court with residential burglary (Pen. Code,[2] §§ 459/460). At his October 24, 1990, arraignment on the felony complaint, the district attorney made an informal request for discovery pursuant to section 1054.5, subdivision (b). On November 6, 1990, at the conclusion of a preliminary hearing, the municipal court, per The Honorable Robert C. Coates, reduced the burglary charge from a felony to a misdemeanor. (See § 17, subd. (b); Esteybar v. Municipal Court (1971) 5 Cal.3d 119
[95 Cal.Rptr. 524, 485 P.2d 1140].) On November 27, 1990, Hobbs was arraigned in San Diego Municipal Court on the misdemeanor burglary count. On December 27, 1990, the district attorney filed a notice of and motion for discovery, and order to show cause re contempt. On January 3, 1991, after hearing, The Honorable Charles G. Rogers granted the prosecution's discovery motion, ordering Hobbs to disclose those items listed under section1054.3. On January 7, 1991, Hobbs filed a petition for writ of mandate in San Diego Superior Court. On January 23, 1991, the superior court, per The Honorable Charles Hayes, denied the petition and remanded the matter to municipal court with directions to modify the discovery order to include reciprocal provisions concerning rebuttal evidence. In its written opinion, the superior court held section 1054.3 was constitutional and applicable to misdemeanors. On February 6, 1991, Judge Rogers issued an amended discovery order. Hobbs filed his petition with this court on February 15, 1991.
 DISCUSSION I
On June 5, 1990, the voters enacted Proposition 115, entitled by its framers as the "Crime Victims Justice Reform Act." The initiative changed *Page 676 
criminal law in several areas, including discovery. This case deals solely with the discovery provisions of Proposition 115 that mandate reciprocal discovery and authorize prosecutorial discovery. As is not uncommon with initiatives, Proposition 115 did not write on a clean slate. We find it instructive, therefore, to begin with a brief history of the right of the prosecution to discovery in California.
The first case to authorize discovery directed at the defense was Jones v. Superior Court (1962) 58 Cal.2d 56 [22 Cal.Rptr. 879,372 P.2d 919, 96 A.L.R.2d 1213], where the defendant sought a continuance on the day set for trial, and, as a condition of granting his request, the trial court ordered the defense to provide limited discovery. In an opinion by Chief Justice Traynor, our Supreme Court held the privilege against self-incrimination did not shield the defendant from being forced to produce the names and identities of witnesses who would be used to prove the defendant's late proffered defense of impotency in a rape case. The court in Jones flatly declared that discovery "should not be a one-way street." (Id. at p. 60.)
The decision in Jones, supra, 58 Cal.2d 56, led to routine discovery orders directed at defendants until the Supreme Court adopted a more restrictive approach in Prudhomme v. SuperiorCourt (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673]. InPrudhomme, the defendant objected to a pretrial discovery order compelling her attorney to disclose to the prosecution the names, addresses and expected testimony of defense witnesses to be called at her murder trial. The Supreme Court limited its earlier holding in Jones to its facts and struck down the order before it because the disclosure of the requested information "conceivably might lighten the prosecution's burden of proving its case in chief." (Id. at p. 326.) The court in Prudhomme
also articulated a "link in a chain" test: "[T]he privilege forbids compelled disclosures which could serve as a `link in a chain' of evidence tending to establish guilt of a criminal offense; in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged [request] cannot possibly have a tendency to incriminate the witness." (Ibid.) Prudhomme explicitly relied at least in part on an analysis of the Fifth Amendment to the United States Constitution and federal cases. (Id. at pp. 323-326.) However, in later cases, the California Supreme Court revisitedPrudhomme and declared that Prudhomme had in fact been premised on the privilege against self-incrimination now contained in article I, section 15 of the California Constitution. (See Reynolds v. Superior Court (1974)12 Cal.3d 834, 843 [117 Cal.Rptr. 437, 528 P.2d 45] ["[I]t cannot be gainsaid that Prudhomme *Page 677 
put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires."] and Allen v. Superior Court (1976)18 Cal.3d 520, 524-525 [134 Cal.Rptr. 774, 557 P.2d 65] [noting that the trend of federal decisions was not "wholly consistent" with the Prudhomme interpretation of the privilege against self incrimination].)[3]
Meanwhile, an opposite trend was about to emerge under federal law. Three months after Prudhomme, supra, 2 Cal.3d 320, was filed, the United States Supreme Court filed its decision inWilliams v. Florida (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893], in which it upheld Florida's notice-of-alibi statute. The statute required a criminal defendant to give notice to the prosecution if the defendant intended to claim an alibi and to furnish the prosecution with information as to the alibi, including the names and addresses of alibi witnesses the defense intended to call. The court in Williams determined that no violation of a defendant's Fifth Amendment privilege against self-incrimination would result, as the statute merely accelerated the disclosure of evidence that the defendant would introduce at trial. (Id. at p. 85 [26 L.Ed.2d at p. 452].) InWardius v. Oregon (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208], the United States Supreme Court found no violation of the Fifth Amendment privilege in Oregon's notice-of-alibi statute, but held that it violated the defendant's due process rights because it did not provide for reciprocal discovery for the defense. (Id. at pp. 475-476 [37 L.Ed.2d at pp. 87-88].) InUnited States v. Nobles (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160], the defense proposed to call its investigator to challenge the validity of the identification by the prosecution's eyewitnesses. The trial court would not allow the investigator to testify unless the defense turned over his written report detailing his interviews with the witnesses for an in camera review. The Supreme Court upheld the trial court, concluding "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." (Id. at p. 234 [45 L.Ed.2d at p. 151].)
However, in People v. Collie (1981) 30 Cal.3d 43, 48 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], the California Supreme Court held a trial *Page 678 
court's order that the defense turn over notes prepared by its investigator was improper and declared "we disapprove of any compelled production of defense evidence absent explicit legislative authorization."
In 1982, the California Legislature enacted a statute authorizing courts to order disclosure of statements of defense witnesses after the witnesses had testified during trial.[4] InIn re Misener (1985) 38 Cal.3d 543, 551-558 [213 Cal.Rptr. 569,698 P.2d 637], the California Supreme Court held the statute was unconstitutional as violative of California's self-incrimination privilege. In essence, the Misener court held: "The privilege forbids compelled disclosures from the defendant that will aid the prosecution." (Id. at p. 558.)
Basically, that was the state of the law of prosecutorial discovery when Proposition 115 was drafted. With respect to discovery, Proposition 115, among other things, specifically added a constitutional provision calling for "reciprocal" discovery in criminal cases.[5] The initiative also added a new chapter to the Penal Code (§ 1054 et seq.), outlining the materials and information that the prosecution and defense must jointly disclose, such as the names, addresses and statements of intended witnesses.[6] The measure *Page 679 
also deleted language in other sections of the Penal Code requiring the prosecution to turn over police reports, as well as provisions superseded by *Page 680 
the initiative. Proposition 115 also made reference to the subject of discovery in amending section 866 of the Penal Code to provide, among other things, the purpose of the preliminary hearing is to determine probable cause, not to afford the parties an opportunity for further discovery.
Proposition 115 also touched upon the subject of discovery in section 3 of the measure, which would have amended section 24 of article I of the state Constitution to provide: (1) certain rights of criminal defendants shall be construed in a manner consistent with the United States Constitution, and (2) our state Constitution shall not be construed to afford greater rights than those afforded by the United States Constitution.[7] In Raven
v. Deukmejian (1990) 52 Cal.3d 336, 341 [276 Cal.Rptr. 326,801 P.2d 1077], the Supreme Court held section 3 of Proposition 115 amounted "to a qualitative constitutional revision, an undertaking beyond the reach of the initiative process" and invalidated it. The court in Raven, however, found the remaining sections of Proposition 115 are severable and withstood the other constitutional challenge brought against it in that case.[8] *Page 681 
 II (1a) In light of Raven, supra, 52 Cal.3d 336, Hobbs contends the discovery provisions of Proposition 115 cannot be upheld because they violate the right against self-incrimination under California law.
We summarize Hobbs's argument as follows:
One of the purposes of Proposition 115 was to restrict the rights of criminal defendants to those specified under the federal Constitution as interpreted by the United States Supreme Court. (See Prop. 115, § 1, subd. (b).) In other words, a major goal of the initiative was the demise of the doctrine of independent state grounds so that California courts could no longer use the state Constitution to give a more expansive meaning to a right of a criminal defendant than that afforded by the United States Constitution. A line of California Supreme Court cases has employed the doctrine of independent state grounds to restrict — and arguably preclude — prosecutorial discovery. (See, e.g., Prudhomme, supra, 2 Cal.3d 320;Reynolds, supra, 12 Cal.3d 834; Allen, supra, 18 Cal.3d 520;In re Misener, supra, 38 Cal.3d 543.) Since the Supreme Court in Raven, supra, 52 Cal.3d 336, has declared that section 3 of Proposition 115, which sought to eliminate the doctrine of independent state grounds, is invalid, those cases which hold prosecution discovery is violative of the California Constitution are still good law. Hence, the codified discovery provisions of Proposition 115 permitting prosecution discovery are unconstitutional under the California Constitution's privilege against self-incrimination (Cal. Const., art. I, § 15).
The problem with this argument is twofold. First, it ignores section 5 of Proposition 115, which added a provision to the state Constitution that reads: "In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process." (Cal. Const. art. I, § 30, subd. (c).) Second, Hobbs's argument ignores well-established principles of statutory construction that favor the upholding of enactments.
Because Proposition 115 gives constitutional status to reciprocal discovery, the continued vitality of the Prudhomme
line of cases is at issue, notwithstanding the invalidation of the proposed amendment to article I, section 24, by the court inRaven, supra, 52 Cal.3d 336. Thus, our task in determining whether prosecutorial discovery as provided for in Proposition 115 is violative of the California Constitution requires us to construe the new article I, section 30, subdivision (c). We bring to this task various established principles of statutory construction, which are equally applicable to the *Page 682 
interpretation of initiatives. (Center for Public Interest Law
v. Fair Political Practices Com. (1989) 210 Cal.App.3d 1476, 1484 [259 Cal.Rptr. 21].)
(2) Our primary task in interpreting an enactment is to determine the lawmaker's intent. (Brown v. Kelly BroadcastingCo. (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708,771 P.2d 406].) In the case of a constitutional provision adopted by the voters, their intent governs. (Kaiser v. Hopkins (1936)6 Cal.2d 537, 538 [58 P.2d 1278].) To determine intent, the court turns first to the words themselves, giving them their ordinary and generally accepted meaning. (People v. Knowles (1950)35 Cal.2d 175, 182 [217 P.2d 1]; People v. Castro (1985)38 Cal.3d 301, 310 [211 Cal.Rptr. 719, 696 P.2d 111].)
(1b) Here, article I, section 30, subdivision (c), clearly mandates reciprocal discovery in criminal cases. Reciprocal is commonly defined as "Performed, experienced, or felt by both sides." (American Heritage Dict. (1981) p. 1088.)[9] Therefore, by its very terms, the new constitutional provision requires both defense and prosecution discovery. This would be in keeping with a stated purpose of Proposition 115, namely "to restore balance to our criminal justice system." (Prop. 115, § 1, subd. (c).)
Does such an interpretation of the new constitutional provision conflict with the privilege against self-incrimination contained in article I, section 15? The answer is no. The new constitutional provision directly addresses the issue of discovery while article I, section 15, does not. It is only through the interpretation of the Prudhomme line of cases that prosecutorial discovery is found violative of the California privilege against selfincrimination. (3) Generally, a provision that specifically addresses a particular subject takes precedence over a provision that is general. (Berkeley Sch. Dist. v. Cityof Berkeley (1956) 141 Cal.App.2d 841, 848 [297 P.2d 710].) "Under familiar rules of construction, if it is impossible to harmonize or reconcile portions of a constitution, special provisions control more general provisions, and the general and special provisions operate together, neither working the repeal of the other." (People v. Western Air Lines, Inc. (1954)42 Cal.2d 621, 637 [268 P.2d 723].) (4) Further, "[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted. [Citation.] This principle applies to legislation enacted by initiative. [Citation.]" (People v. Weidert (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380].) (1c) Thus, we may presume *Page 683 
the drafters who framed the new constitutional provision regarding discovery and the voters who enacted it were aware of article I, section 15, and the Prudhomme line of cases. Giving precedence to the new constitutional provision in the area of criminal discovery does not denigrate article I, section 15; it does, however, vitiate the Prudhomme line of cases — which we conclude was one of the purposes behind the new provision.[10]
(Accord see Meeks, supra.)* Such a result by constitutional amendment is clearly within the authority of the electorate. A contrary conclusion on our part would largely render the new constitutional provision nugatory — a result that should be avoided. (People v. Craft (1986) 41 Cal.3d 554, 561 [224 Cal.Rptr. 626, 715 P.2d 585].) While it perhaps would have been better crafted if the new provision had the introductory phrase, "notwithstanding article I, section 15," we are not in the business of grading the drafting skill of those who write initiatives as long as they pass constitutional muster. (5)
Rather, "it is our solemn duty `to jealously guard' the initiative power, it being `"one of the most precious rights of our democratic process."'" (Amador Valley Joint Union High Sch.Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 248 [149 Cal.Rptr. 239, 583 P.2d 1281].) Thus, "enactments should be interpreted when possible to uphold their validity." (AssociatedHome Builders etc., Inc. v. City of Livermore (1976) 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) "We must avoid an interpretation which evades the purpose of the initiative. [Citations.] An interpretation which is repugnant to the purpose of the initiative would permit the very `mischief' the initiative was designed to prevent. [Citations.]" (SantaBarbara County Taxpayers Assn. v. County of Santa Barbara
(1987) 194 Cal.App.3d 674, 681 [239 Cal.Rptr. 769].)
 III (6) Hobbs and amicus contend section 1054.3 violates the federal privilege against self-incrimination because it compelspretrial disclosure of defense witnesses and theirstatements. The contention is without merit. (Accord Meeks,supra.)*
In essence, Hobbs is arguing that because section 1054.3
requires the defense to disclose more material than other prosecutorial discovery statutes *Page 684 
approved by federal cases it has not been sanctioned as nonviolative of the Fifth Amendment. Hobbs points to such cases as Williams, supra, 399 U.S. 78, which involved a notice-of-alibi statute, and Nobles, supra, 422 U.S. 225, which involved a court order that a defense investigator's report concerning witnesses who testified be disclosed for an in camera inspection. Hobbs then notes section 1054.3 requires much greater disclosure by the defense than the type of prosecutorial discovery that garnered the imprimatur of the United States Supreme Court in Williams and Nobles. Along this line, amicus observes the high court has not endorsed a compelled, pretrial disclosure of the statement of a witness against a Fifth Amendment attack.
Contrary to the position of Hobbs and amicus, it does not follow logically that section 1054.3 is violative of the Fifth Amendment on the basis that the statute or order in certain cases required less disclosure. Rather, the proper test to determine if a statute such as section 1054.3 violates the Fifth Amendment, is to analyze it under principles set forth in the United States Supreme Court cases.
We begin with Williams, supra, 399 U.S. 78, 85 [26 L.Ed.2d 446, 452], where the Supreme Court said:
"At most, the [notice-of-alibi] rule only compelled petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the petitioner from the beginning planned to divulge. Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense. . . ."
In Nobles, supra, 422 U.S. 225, 234 [45 L.Ed.2d 141, 151], the high court stated "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial."
In Fisher v. United States (1976) 425 U.S. 391 [48 L.Ed.2d 39, 96 S.Ct. 1569], the United States Supreme Court held that tax-related documents given by a person under investigation to his attorney are not protected from discovery under the Fifth Amendment. "We did so on the ground that in such a case `the ingredient of personal compulsion against an accused is lacking.'" (Id. at p. 397 [48 L.Ed.2d at p. 48].) "Agent or no, the lawyer is not the taxpayer. The taxpayer is the `accused,' and nothing is being extorted from him." (425 U.S. at p. 398 [48 L.Ed.2d at p. 48].) The court in Fisher continued:
"The Amendment protects a person from being compelled to be a witness against himself. Here, the taxpayers retained any privilege they ever had not *Page 685 
to be compelled to testify against themselves and not to be compelled themselves to produce private papers in their possession. This personal privilege was in no way decreased by the transfer. It is simply that by reason of the transfer of the documents to the attorneys, those papers may be subpoenaed without compulsion on the taxpayer. The protection of the Fifth Amendment is therefore not available. `A party is privileged from producing evidence but not from its production.'" (425 U.S. at pp. 398-399 [48 L.Ed.2d at pp. 48-49], original italics.)
In Taylor v. Illinois (1988) 484 U.S. 400 [98 L.Ed.2d 798, 108 S.Ct. 646], the United States Supreme Court was called upon to review a sanction for failure to identify a defense witness in response to a pretrial discovery request under Illinois Supreme Court rule 413(d),[11] which is similar to section 1054.3. The high court held the sanction passed constitutional muster, specifically finding it did not violate the compulsory process clause of the Sixth Amendment. While Taylor therefore is a Sixth Amendment case, it is nonetheless also instructive on principles associated with the Fifth Amendment as it relates to discovery. Specifically, Taylor teaches that if a defendant is going to offer a defense, there is no constitutional infirmity in requiring him to reveal information before trial.
"The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively, without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. . . . The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.
"The defendant's right to compulsory process is itself designed to vindicate the principle that the `ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.' [Citation.] Rules thatprovide for pretrial discovery of an opponent's witnesses servethe same high purpose. Discovery, like cross-examination, *Page 686 
minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony. The `State's interest in protecting itself against an eleventh hour defense' is merely one component of the broader public interest in a full and truthful disclosure of critical facts." (Taylor v. Illinois, supra, 484 U.S. at pp. 410-412 [98 L.Ed.2d at pp. 811-812], fns. omitted, italics added.)
The clear import of these decisions is (1) "the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial" (Taylor, supra, 484 U.S. at p. 411, fn. 16 [98 L.Ed.2d at p. 812]) and (2) the Fifth Amendment is not ordinarily implicated by pretrial discovery of witnesses' statements that furthers such goals.[12]
Finally, we note our Supreme Court has rejected the notion that prosecutorial discovery of defense witnesses's statements violates the Fifth Amendment. (People v. Collie, supra,
30 Cal. 3d at pp. 51-52, fn. 2.)
 IV (7) Hobbs contends the statutory discovery provisions of Proposition 115 violate the due process clause of the United States Constitution because they fail to explicitly require the prosecution to disclose to the defense any evidence it obtained as the result of receiving discovery material from the defense. Specifically, Hobbs complains about the lack of an express reciprocity provision requiring the prosecution to further disclose information it may present in rebuttal after it has discovered defense material.
The critical United States Supreme Court decision on whether criminal discovery statutes meet the due process requirement isWardius v. Oregon, supra, 412 U.S. 470. In Wardius, the United States Supreme Court held that Oregon's notice-of-alibi statute was unconstitutional because it did not require reciprocal discovery, i.e., it did not require state disclosure to the defendant after the defense disclosure. The court reviewed its earlier decision in Williams v. Florida, supra,399 U.S. 78, and noted that the Florida statute had required the state, after receiving discovery from the defendant concerning his alibi, to notify the defendant of any witnesses it proposed to *Page 687 
offer in rebuttal to the alibi defense. Since the Oregon statute lacked such a reciprocal provision, the Wardius court held the statute violated due process.
"Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, [citation] it does speak to the balance of forces between the accused and his accuser. [Citation.] The Williams Court was therefore careful to note that `Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant.' [Citation.] The same cannot be said of Oregon law. . . . More significantly, Oregon, unlike Florida, has no provision which requires the State to reveal the names and addresses of witnesses it plans to use to refute an alibi defense." (412 U.S. at pp. 474-475 [37 L.Ed.2d at p. 87], fns. deleted.) The Wardius court went on to say: "It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." (Id. at p. 476 [37 L.Ed.2d at p. 88].)
Proposition 115's statutory discovery enactment does not on its face contain a provision requiring reciprocal discovery with respect to material disclosed by the defense as mandated byWardius, supra, 412 U.S. 470. Certainly, Proposition 115 would have been better drafted had it included an explicit provision to that effect. However, the question remains whether such a reciprocal provision can be read into Proposition 115.
We conclude that it can — and must — be read into the statutory scheme of Proposition 115.[13] As we stated earlier, "enactments should be interpreted *Page 688 
when possible to uphold their validity." (Associated HomeBuilders, etc., Inc. v. City of Livermore, supra, 18 Cal.3d 582, 598.) Section 1054.1 imposes upon the prosecution the duty to disclose to the defendant various materials and information, including information the prosecution plans to use at trial. (See § 1054.1, subds. (a) and (f).) Since rebuttal is part of a trial, this section logically includes information the prosecution plans to use in either its case-in-chief or in rebuttal. (Accord seeMeeks, supra.)* Further, among the information that prosecution is required to disclose under section 1054.1 is the type of information that could be used during rebuttal to counteract defense evidence. (§ 1054.1, subd. (a), (d) and (f).) Under section 1054.7, which provides the parties have a continuing duty to immediately disclose material as it becomes known to them, a reciprocal duty on the part of the prosecution per Wardius, supra, 412 U.S. 470, is implicit. In other words, once the defense discloses information to the prosecution, the prosecution in turn is obligated under its continuing duty of disclosure to tell the defense of any witnesses it intends to call in rebuttal (§ 1054.1, subd. (a)), to disclose whether defense witnesses have felony convictions (1054.1, subd. (d)), and to turn over any of its reports about the disclosed defense witnesses or evidence (1054.1, subd. (f)).[14]
We are not persuaded by amicus's argument that section 1054.5, subdivision (a), prevents us from interpreting Proposition 115 as providing the constitutionally required level of reciprocity. Section 1054.5, subdivision (a), states in part "[n]o order requiring discovery shall be made in criminal cases except as provided in this chapter." According to amicus, this provision renders Proposition 115 constitutionally infirm as a result of the lack of an express provision on reciprocity. This argument ignores other portions of Proposition 115, such as section 1054, subdivision (e), which mandate an interpretation of the initiative's statutory discovery scheme to ensure discovery in criminal cases occurs only "as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."[15] *Page 689 
In sum, we conclude the discovery provisions of Proposition 115 do not violate the due process clause of the Fourteenth Amendment. In Wardius, supra, 412 U.S. 470, the United States Supreme Court has articulated a due process requirement of reciprocity in criminal discovery statutes. This requirement imposes a duty upon the prosecution to disclose to the defense new evidence it obtains or possesses as a result of defense-supplied discovery. We do not find any language in Proposition 115 that changes this requirement of reciprocity. Therefore, under these circumstances, we find Proposition 115 comports with due process under the United States Constitution.[16]
 V (8) Next, Hobbs attacks the constitutionality of the discovery provisions of Proposition 115 on the basis they violate his constitutional right to counsel under the Sixth Amendment. Again, we find no constitutional infirmity. (Accord Meeks,supra.)*
Hobbs relies principally on People v. Collie, supra,30 Cal.3d 43, 55.[17] However, the relevant portion of Collie is dictum, which merely discusses the possibility that a defendant's right to counsel would be implicated by prosecutorial discovery.
In Nobles, supra, 422 U.S. 225, 240, footnote 15 [45 L.Ed.2d 141, 154-155], the United States Supreme Court rejected an argument that disclosure by the defense violated the defendant's right to counsel: "We cannot *Page 690 
accept respondent's contention that the disclosure order violated his Sixth Amendment right to effective assistance of counsel. This claim is predicated on the assumption that disclosure of a defense investigator's notes in this and similar cases will compromise counsel's ability to investigate and prepare the defense case thoroughly. Respondent maintains that even the limited disclosure required in this case will impair the relationship of trust and confidence between client and attorney and will inhibit other members of the `defense team' from gathering information essential to the effective preparation of the case. See American Bar Association Project on Standards for Criminal Justice, The Defense Function § 3.1(a) (App. Draft 1971). The short answer is that the disclosure order resulted from respondent's voluntary election to make testimonial use of his investigator's report. Moreover, apart from this waiver, we think that the concern voiced by respondent fails to recognize the limited and conditional nature of the court's order." Hobbs maintains Nobles is distinguishable because it did not involve pretrial discovery. What Hobbs ignores is that section 1054.3
requires disclosure of witnesses and evidence the defendant intends to offer at trial; hence, the statutory discovery scheme of Proposition 115 merely accelerates the process. Pretrial disclosure avoids surprise, aids the administration of justice and "enhances the fairness of the adversary system." (Wardius,supra, 412 U.S. 470, 474 [37 L.Ed.2d 82, 87].) The fact that Proposition 115 allows discovery before trial rather than after a witness has testified is of no constitutional significance since the United States Supreme Court has affirmed the right of states to experiment "with systems of broad discovery designed to achieve these goals." (Ibid.; see also Williams, supra,399 U.S. 78, 85-86 [26 L.Ed.2d 446, 452-453].) An important aim of discovery is to enhance the search for truth while at the same time reduce, if not eliminate, the elements of surprise and gamesmanship from the proceedings. (See Taylor, supra,484 U.S. 400, 410-412 [98 L.Ed.2d 798, 811-813].) As the court in Nobles
observed: "The Sixth Amendment does not confer the right to present testimony free from legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." (422 U.S. 225, 241 [45 L.Ed.2d 141, 155].)
 VI (9a) Hobbs contends section 1054.3 violates the work product doctrine. The contention is without merit. (Accord Meeks,supra.)*
We note at the outset of this discussion that section 1054.6 explicitly protects the work product privilege. Section 1054.6 provides: *Page 691 
"Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure, or which are privileged pursuant to an express statutory provision, or are privileged by the Constitution of the United States."[18]
First, Hobbs contends the requirement of disclosing witness statements and reports violates the work product doctrine as espoused in such cases as Hickman v. Taylor (1947)329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385].
In Hickman, supra, 329 U.S. 495, the United States Supreme Court recognized the work product doctrine, establishing a qualified privilege for certain materials prepared by an attorney "acting for his client in anticipation of litigation." (Id. at p. 508 [91 L.Ed.2d at p. 461].) As the court observed:
"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case [citation] as the `Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." (329 U.S. at pp. 510-511 [91 L.Ed.2d at p. 462].)[19] *Page 692 
At least in part, Hobbs has misread Hickman for he argues on the basis of that case that witness statements and reports of witness interviews necessarily are work product. The sentence Hobbs cites for this proposition reads: "This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . ." (Hickman,supra, 329 U.S. at p. 511 [91 L.Ed. at p. 462], italics added.) The correct meaning of this sentence is that work product may be found in interviews, statements, etc. However, to the extent that witnesses' statements and reports of witness interviews reflect merely what the witnesses said they are not work product. As the high court said in Nobles, supra, 422 U.S. at page 238 [45 L.Ed.2d at page 154]: "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." (See also Goldberg v. United States (1976)425 U.S. 94, 106 [47 L.Ed.2d 603, 615, 96 S.Ct. 1338].) To the extent that a report of a witness interview reflects an attorney's mental processes, it is exempted from discovery by section 1054.6, and a party can seek a protective order to that effect (see Code Civ. Proc., § 2031, subd. (e)) or an in camera review in which the privileged material can be excised.[20]
We find the following observation by the nation's highest court constructive. In Hickman, supra, 329 U.S. 495, 511 [91 L.Ed. 451, 462], the United States Supreme Court noted:
"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."
In Nobles, supra, the high court noted:
"`We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system *Page 693 
depend on full disclosure of all the facts, within the framework of the rules of evidence." (422 U.S. at p. 230 [45 L.Ed.2d at p. 149], quoting United States v. Nixon (1974) 418 U.S. 683, 709 [41 L.Ed.2d 1039, 1064-1065, 94 S.Ct. 3090].)
Second, Hobbs, relying upon City of Long Beach v. SuperiorCourt (1976) 64 Cal.App.3d 65 [134 Cal.Rptr. 468], contends section 1054.3, subdivision (a), in effect requires a defendant to turn over a witness list and this violates the work product doctrine under California law. In essence, Hobbs argues that section 1054.3 is not enforceable because (1) witness lists are work product under City of Long Beach, and (2) section 1054.6 exempts all work product materials from discovery. Hobbs's contention must fail because (1) the holding of City of LongBeach does not apply in this context and in any event is distinguishable, and (2) section 1054.6 exempts work product "as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure," not all work product.
(10) Initially, we note, as we indicated earlier (see fn. 19,ante), that the work product doctrine is applicable to criminal cases as well as civil cases. However, that does not necessarily mean that the doctrine has exactly the same application in the criminal arena as it does in the civil arena.[21] Thus, before an attempt is made to transplant a civil theory of work product onto criminal ground, it is advisable to note relevant differences in criminal and civil procedure. In particular, we note — as did the Court of Appeal in City of Long Beach, supra,64 Cal.App.3d 65, 73 — that in civil cases the parties may obtain "the identity and location of persons having knowledge of any discoverable matter" as part of discovery. (Code Civ. Proc., §2017, subd. (a); see also former Code Civ. Proc., §2016, subd. (b) ["the identity and location of persons having knowledge of relevant facts" is discoverable] and Greyhound Corp. v.Superior Court (1961) 56 Cal.2d 355, 372 [15 Cal.Rptr. 90,364 P.2d 266].) In criminal cases, there is no comparable procedure.
In City of Long Beach, supra, 64 Cal.App.3d 65, 79, the Court of Appeal held that an interrogatory requesting the identity of nonexpert witnesses intended to be called at trial violated the qualified work product protection doctrine found in then Code of Civil Procedure section 2016, subdivision (b).[22] The party objecting to the interrogatory had already disclosed the *Page 694 
names of all witnesses with knowledge of relevant facts pursuant to then section 2016, subdivision (b), of the Code of Civil Procedure. Noting that there is no statutory definition of work product, the court in City of Long Beach adopted language fromMack v. Superior Court (1968) 259 Cal.App.2d 7, 10 [66 Cal.Rptr. 280], as a guide for ascertaining the scope of work product: "`[M]aterial of a derivative character . . . developedas a result of the initiative of counsel in preparing for trial.. . .'" (64 Cal.App.3d at p. 72, original italics.) The Court of Appeal in City of Long Beach concluded:
"Clearly, the complete list of trial witnesses sought in this case is a derivative product developed as a result of the initiative of counsel in preparing for trial. The forced revelation of this list would violate the work product doctrine because counsel's decision in this respect is strategic; it necessarily reflects his evaluation of the strengths and weaknesses of his case. The threat of disclosure would inevitably chill his willingness to `investigate not only the favorable but the unfavorable aspects of such cases' [citation] because his adversary could deduce, from the identity of the witnesses listed as having knowledge of relevant facts but left out of the trial list, where his case was weakest." (Id. at p. 73.) After a somewhat exhaustive discussion of state and federal authorities on the subject as well as the language of then section 2016, subdivision (b), of the Code of Civil Procedure (64 Cal.App.3d at pp. 74-79), the Court of Appeal in City of Long Beach concluded a lay witness list is subject to a work product privilege.[23]
(9b) For our purposes here, it is of supreme significance that the court characterized such a work product privilege as a qualified one: *Page 695 
"All we hold is that the petitioner is entitled to a qualified work product privilege. The identity of the intended trial witnesses cannot be compelled without a showing that denial of such discovery will `unfairly prejudice the party seeking discovery or will result in an injustice.' (Code Civ. Proc., [former] § 2016, subd. (b).)" (64 Cal.App.3d at p. 79.) Thus, the court did not find a witness list deserves the absolute work product privilege that was provided for in former section 2016, subdivision (b), of the Code of Civil Procedure and is currently found in section 2018, subdivision (c), of the Code of Civil Procedure.[24]
We therefore do not perceive the unenforceability of section1054.3 as suggested by Hobbs on the basis that City of LongBeach, supra, 64 Cal.App.3d 65, holds witness lists are work product. Proposition 115 clearly states:
"Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure. . . ." (§ 1054.6.) "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'" (Kimmel v. Goland (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) It is clear that the intent behind Proposition 115 was to recognize solely the absolute work product privilege that is attached to "[a]ny writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories" (Code Civ. Proc., §2018, subd. (c)) and not to embrace the broader qualified work product privilege. Since under City of Long Beach, supra, only a qualified work product privilege is attached to witness lists, that case presents no basis to preclude enforcement of section1054.3. "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted . . . [and] [t]his principle applies to legislation enacted by initiative." (People v. Weidert, supra, 39 Cal.3d 836, 844.)
 VII (11) Hobbs contends the discovery provisions of Proposition 115 do not apply to misdemeanor cases. Hobbs is wrong.
The language of Proposition 115 makes no distinction between felony and misdemeanor cases. Rather, it repeatedly refers to the "criminal justice *Page 696 
system," (see, e.g., Prop. 115, § 1) and "criminal cases" (see Prop. 115, § 5, and in particular Cal. Const., art. I, § 30, subd. (c).) The Penal Code includes misdemeanors as well as felonies in its definitions of crimes. (See §§ 15-17.) Significantly, the language of section 1054, subdivision (e), also refers to "criminal cases." Hobbs notes that the proponents of Proposition 115 referred to specific felony cases in their ballot argument in favor of the initiative. However, the reference to felony cases in the ballot argument pales in significance to the language of Proposition 115. The language of an enactment is more indicative of legislative intent than extrinsic aids to construction. (People v. Knowles, supra,35 Cal.2d 175, 182-183.)
We also find significant the fact that in the area of discovery, Proposition 115 repealed both the misdemeanor statute (§ 1430) and part of the felony statute (§ 859) that required discovery of police reports. (See Prop. 115, §§ 15, 27.) Thus, where there were specific discovery statutes concerning felonies and misdemeanors, the initiative dealt with both categories of crime. We conclude this is strong evidence of legislative intent to include misdemeanors as well as felonies within the discovery provisions of the measure.
The major argument raised by Hobbs[25] and amicus is that the statutory requirement that in-custody misdemeanor defendants be tried within 30 days of arraignment (§ 1382, subd. (c)) conflicts with section 1054.7, which requires discovery be made at least 30 days before trial, and section 1054.5, subdivision (b), which requires an informal discovery demand and bars any court enforcement until 15 days after that demand. Amicus further points to a local court rule that requires criminal motions in misdemeanor cases to be noticed 15 days before hearing.[26]
Hobbs and amicus contend that it is impracticable if not impossible to complete discovery 30 days before trial in misdemeanor cases, particularly those involving in-custody defendants. Therefore, argue Hobbs and amicus, the discovery scheme of Proposition 115 was not intended to apply to misdemeanors. However, this argument ignores the parties' continuing duty to disclose under section 1054.7 as well as the statutory authority of the court under section 1054.5, subdivision (b), to make any order, including immediate disclosure, necessary to enforce the discovery provisions of Proposition 115. In other words, Proposition 115 has set up a procedure to deal with problems associated with such time limits. Certainly, the court would have authority under section 1054.5 to issue an order to shorten time or an ex parte order to deal with any time problems posed by the local court rule. To suggest we must render a statute enacted by *Page 697 
the People inapplicable to misdemeanors on the basis of a court rule would force us to establish a new hierarchy of laws, which is something we cannot do.
 DISPOSITION
Petition denied.
Kremer, P.J., concurred.
[1] The March 1, 1991, order to show cause erroneously referred to the Superior Court of San Diego County rather than the San Diego Municipal Court as the respondent. However, there is no prejudice because the issues have been fully briefed and no party has complained.
[2] All statutory references are to the Penal Code unless otherwise specified.
[3] In Reynolds, supra, 12 Cal.3d 834, the Supreme Court struck down a trial court order directing the defense to give the prosecution at least three days' notice in advance of calling any alibi witness at trial and to disclose the names, addresses and telephone numbers of such witnesses. The Supreme Court took the position that the courts should not be in the business of fashioning such discovery orders. (Id. at pp. 845-850.) InAllen, supra, 18 Cal.3d 520, the Supreme Court threw out a trial court order that the defense as well as the prosecution disclose the names of prospective witnesses so that the names could be read to potential jurors to ascertain whether they were acquainted with any witnesses. The court held the order violated the privilege against self-incrimination contained in the California Constitution. (Id. at pp. 523-526.)
[4] The statute in question was section 1102.5. (Stats. 1982, ch. 1249, § 2, p. 4590.) Section 24 of Proposition 115 repeals section 1102.5.
[5] Section 5 of Proposition 115, in relevant part, provides: "Section 30 is added to article I of the California Constitution to read:
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(c) In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process."
[6] Section 23 of Proposition 115 provides: "Chapter 10 (commencing with Section 1054) is added to Title 6 of Part 2 of the Penal Code, to read:
 "Chapter 10. DISCOVERY
"1054. This chapter shall be interpreted to give effect to all of the following purposes:
"(a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery.
"(b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested.
"(c) To save court time in trial and avoid the necessity for frequent interruptions and postponements.
"(d) To protect victims and witnesses from danger, harassment, and undue delay of the proceedings.
"(e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States.
"1054.1. The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:
"(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial.
"(b) Statements of all defendants.
"(c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged.
"(d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.
"(e) Any exculpatory evidence.
"(f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at trial.
"1054.2. No attorney may disclose or permit to be disclosed to a defendant the address or telephone number of a victim or witness whose name is disclosed to the attorney pursuant to subdivision (a) of Section 1054.1 unless specifically permitted to do so by the court after a hearing and a showing of good cause.
"1054.3. The defendant and his or her attorney shall disclose to the prosecuting attorney:
"(a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.
"(b) Any real evidence which the defendant intends to offer in evidence at the trial.
"1054.4. Nothing in this chapter shall be construed as limiting any law enforcement or prosecuting agency from obtaining nontestimonial evidence to the extent permitted by law on the effective date of this section.
"1054.5. (a) No order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties.
"(b) Before a party may seek court enforcement of any of the disclosures required by this chapter, the party shall make an informal request of opposing counsel for the desired materials and information. If within 15 days the opposing counsel fails to provide the materials and information requested, the party may seek a court order. Upon a showing that a party has not complied with Section 1054.1 or 1054.3 and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure.
"(c) The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted. The court shall not dismiss a charge pursuant to subdivision (b) unless required to do so by the Constitution of the United States.
"1054.6. Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure, or which are privileged pursuant to an express statutory provision, or are privileged as provided by the Constitution of the United States.
"1054.7. The disclosures required under this chapter shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred. If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred. `Good cause' is limited to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement.
"Upon the request of any party, the court may permit a showing of good cause for the denial or regulation of disclosures, or any portion of that showing, to be made in camera. A verbatim record shall be made of any such proceeding. If the court enters an order granting relief following a showing in camera, the entire record of the showing shall be sealed and preserved in the records of the court, and shall be made available to an appellate court in the event of an appeal or writ. In its discretion, the trial court may after trial and conviction, unseal any previously sealed matter."
[7] Section 3 of Proposition 115 would have added the following language to section 24 of article I of the California Constitution: "In criminal cases the rights of a defendant to equal protection of the laws, to due process of law, to the assistance of counsel, to be personally present with counsel, to a speedy and public trial, to compel the attendance of witnesses, to confront the witnesses against him or her, to be free from unreasonable searches and seizures, to privacy, to not becompelled to be a witness against himself or herself, to not be placed twice in jeopardy for the same offense, and to not suffer the imposition of cruel or unusual punishment, shall be construed by the courts of this state in a manner consistent with the Constitution of the United States. This Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United States, nor shall it be construed to afford greater rights to minors in juvenile proceedings on criminal causes than those afforded by the Constitution of the United States." (Italics added.)
[8] Recently, the Third District Court of Appeal held Proposition 115's discovery provisions are constitutional inMeeks v. Superior Court[*] (Cal.App.).
[*] Reporter's Note: Review granted August 15, 1991; review dismissed October 31, 1991, and cause (C009744) remanded to Court of Appeal, Third Appellate District.
[9] We also note the legal terminology surrounding the area of prosecutorial discovery is replete with the notion of reciprocity. (See Williams v. Florida, supra, 399 U.S. 78;Wardius v. Oregon, supra, 412 U.S. 470.) In these cases, reciprocity is a term of art referring to the due process right of a criminal defendant to have equal access to discovery after making discovery available to the prosecution. (See also §§ 1054, subd. (e), and 1054.6.)
[10] We also conclude the provision was aimed toward warding off applications of the independent state grounds doctrine to interpretations involving criminal discovery. While this goal was also embodied in the proposed amendment to article I, section 24, that was struck down in Raven, supra, 52 Cal.3d 336, there is no legal reason why the initiative could not have made a second, more specific attempt to thwart the application of independent state grounds in a particular area of the law in the new article I, section 30, subdivision (c).
* See Reporter's Note, ante, page 680.
[11] Illinois Supreme Court rule 413(d) provides in pertinent part: "Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the State, defense counsel shall inform the State of any defenses which he intends to make at a hearing or trial and shall furnish the State with the following material and information within his possession or control:
"(i) the names and last known addresses of persons he intendsto call as witnesses together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements, any record of prior criminal convictions known to him. . . ." (Italics added.) (See Taylor v. Illinois,supra, 484 U.S. at p. 403, fn. 2 [98 L.Ed.2d at p. 806].)
[12] A number of state courts have upheld prosecution discovery of defense witness statements against Fifth Amendment attacks. See, e.g., State v. Yates (1988) 111 Wn.2d 793 [765 P.2d 291]; Burton
v. West (Tex. App. 1988) 749 S.W.2d 505; People v. Copicotto (1980)50 N.Y.2d 222 [428 N.Y.S.2d 649, 406 N.E.2d 465]; State v. Dist. Ct.of Thirteenth Jud. D. (1987) 229 Mont. 265 [746 P.2d 604].)
[13] Hobbs and amicus argue on the basis of Wardius, supra,
412 U.S. at pages 476-479 [37 L.Ed.2d at pages 88-90], andPeople v. Reynolds, supra, 12 Cal.3d at pages 845-846, that we cannot read the statutory discovery scheme of Proposition 115 as requiring the prosecution to make discovery disclosures based on defense-supplied discovery. We do not agree. The discussion inWardius had to do with a procedural point raised by the State of Oregon over the defendant's failure to test the reciprocity of the statute by actually giving notice. (412 U.S. at p. 476 [37 L.Ed.2d at p. 88].) While recognizing the power of the courts of Oregon to arbitrate that state's own law, the United States Supreme Court merely declined to predict what the state court would have decided had the defendant given the required notice and then sought reciprocal discovery rights. (Id. at p. 477 [37 L.Ed.2d at pp. 88-89].) Wardius does not preclude us from interpreting a California statute. With respect to our Supreme Court's comments in Reynolds, supra, about the undesirability of courts creating a prosecutorial discovery scheme, we note those comments arose in the context of a trial court's order, not a statute. In fact, the Reynolds court went on to say: "Given the difficulty of the constitutional questions posed by notice-of-alibi procedures, it is far better for this court to pass judgment, if and when necessary, on an integrated legislative document than on our own conditional decree by which we might seek to smooth the constitutionally rough edges of the order of the court below." (12 Cal.3d at p. 846.) Here, the voters of the State of California have legislated an integrated document, and it is within our purview to pass judgment on this legislative document. As an appellate court, that is the business in which we engage.
[14] Also, under section 1054.1, subdivision (e), the continuing duty of the prosecution to turn over material extends to exculpatory evidence, such as information that might establish the truth of a defense witness's testimony. (See People v.Collie, supra, 30 Cal.3d 43, 54.)
[15] Hobbs and amicus also raise other unpersuasive arguments under the due process umbrella, such as Proposition 115 provides for an imbalance in the disclosure of nontestimonial evidence and prohibits the defense from making a "good cause" showing for noncompliance but allows the prosecution to make such a showing. We disagree. As to nontestimonial evidence, section 1054.1, subdivision (c), provides the prosecution must turn over "[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged." Also, with respect to nontestimonial evidence, section 1054.4 merely restates existing law regarding compelled participation by the defendant in providing physical evidence such as blood or fingerprints as well as handwriting exemplars and participation in line-ups. (See, e.g., Schmerber v. California (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826].) As to the "good cause" showing for noncompliance, we note section 1054.7 does not limit such a showing to the prosecution. We do not see how the statute can be read to preclude a defendant from litigating noncompliance was necessary to protect his witnesses or to prevent loss or destruction of his physical evidence. Further, section 1054.6 provides that neither the defendant nor the prosecution is required to disclose materials "which are privileged pursuant to an express statutory provision. . . ."
[16] We note that here the superior court ordered the discovery order to be amended by the municipal court to include provisions that (1) require the prosecution to provide to the defense the names, addresses and statements of persons it intends to call as witnesses to rebut witnesses provided by the defendant in discovery as well as any new physical evidence the prosecution has obtained and intends to use to rebut any of the defense witnesses or evidence and (2) explicitly declare the discovery obligations of the parties are continuing.
[17] Hobbs also relies on two lower federal cases that hold pretrial discovery implicates the right to counsel: Middleton
v. United States (D.C. 1979) 401 A.2d 109; and United States
v. Felt (D.D.C. 1980) 502 F. Supp. 71. We find both cases largely distinguishable, and, in any event, nonbinding on us (People v. Bradley (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457,460 P.2d 129]).
[18] Section 2018, subdivision (c), of the Code of Civil Procedure provides: "Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."
[19] The work product doctrine is applicable to criminal cases as well as civil cases. (Nobles, supra, 422 U.S. 225, 238; see also People v. Collie, supra, 30 Cal.3d at p. 59.)
[20] Contrary to Hobbs's assertion, section 1054.7 does not restrict a trial court's ability to hold in camera hearings to review materials in this context. What section 1054.7 does is (1) authorize the court to hold in camera hearings at the request of a party seeking to deny, restrict or defer a discovery request if the party has "good cause" and (2) limits "good cause" to situations involving witness or victim safety, loss or destruction of evidence or possible compromise of law enforcement investigations.
[21] Indeed, as our Supreme Court observed in Pitchess v.Superior Court (1974) 11 Cal.3d 531, 535-536 [113 Cal.Rptr. 897,522 P.2d 305], the right of an accused to discover is based upon a reason peculiar to criminal procedure, and "civil discovery procedure has no relevance to criminal prosecutions." We realize, of course, subsequent to the decision in Pitchess
there has been a number of refinements in the law of discovery — particularly, with respect to the work product doctrine — both in California and on the federal level.
[22] Former Code of Civil Procedure section 2016, subdivision (b), read in pertinent part: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinion, or legal research or theories shall not be discoverable under any circumstances." (Stats. 1963, ch. 1744, p. 3478.) The statute thus recognized a qualified work product privilege or immunity from discovery as well as a blanket immunity from discovery for work product. In 1986, the Legislature enacted the Civil Discovery Act of 1986, effective July 1, 1987, which repealed sections 2016 through 2036.5 of the Code of Civil Procedure and replaced them with new Code of Civil Procedure sections 2016 through 2036. (Stats. 1986, ch. 1334, p. 4700 et seq.) The pertinent part of former Code of Civil Procedure section 2016, subdivision (b), is now found in Code of Civil Procedure section 2018, subdivisions (b) and (c). Subdivision (b) of the statute encompasses the qualified work product privilege or immunity from discovery, while subdivision (c) encompasses the blanket or absolute immunity.
[23] However, in a criminal case where there is not the initial exchange of persons with knowledge of the case, the list of intended witnesses does not give the opposing party a reflection of counsel's "evaluation of the strengths and weaknesses of his case." (City of Long Beach, supra, 64 Cal.App.3d at p. 73.) It is the process of selection — the winnowing of the initial broader list to a more narrow list of witnesses to be presented at trial — that is the work product.
[24] We note that in City of Long Beach, supra, the interrogatory "also called for petitioner to describe `the nature and extent of the testimony which will be offered by or through said witnesses.'" (Id. at p. 80, italics added.) The Court of Appeal found: "Such an interrogatory clearly calls for production of a writing reflecting the attorney's impressions, conclusions and opinions and thus falls within the absolute work product privilege." (Ibid.)
[25] Hobbs makes this argument even though he was not an in-custody defendant.
[26] San Diego Municipal Court rule 3.01, subdivision (a), provides: "Unless otherwise ordered or specifically provided by law, all motions in criminal cases, accompanied by points and authorities, shall be served and filed at least 15 calendar days . . . before the time appointed for hearing."