[No. S060909. June 18, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCELLOUS LEE TILLIS, Defendant and Appellant.

**COUNSEL**

Stephen Temko, under appointment by the Supreme Court, for Defendant and Appellant.

John T. Philipsborn as Amicus Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson, Stan Cross and Patrick J. Whalen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WERDEGAR, J.**—In this case we must apply reciprocal discovery statutes adopted by the voters as part of Proposition 115 in the June 5, 1990, General

Election. Specifically at issue is the requirement that the prosecution disclose to the defense the names and addresses, "along with any relevant written or recorded statements, of all witnesses it intends to call at trial." (Pen. Code, § 1054.1, subds. (a), (f); all further statutory citations are to this code; see also § 1054.3 [defense disclosure duties].)[1] In *Izazaga v. Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304] (*Izazaga*) we defined the quoted phrase as referring to all witnesses the prosecution " 'reasonably anticipates it is likely to call.' " (*Id.* at p. 376, fn. 11, quoting *State v. Howard* (1978) 56 Ohio St.2d 328 [10 Ohio Op.3d 448, 383 N.E.2d 912, 915].) The Court of Appeal in the present case concluded the prosecutor violated section 1054.1 and denied defendant due process by failing to disclose, before trial, certain evidence used during cross-examination to impeach a defense expert witness. The Court of Appeal inferred that, by engaging in a particular line of cross-examination, the prosecutor must have intended to call witnesses to establish the impeaching facts had the witness not admitted them. The court therefore found violations of the discovery statute and due process, although it concluded defendant had suffered no prejudice.

Because the impeachment information about which defendant complains falls outside the scope of section 1054.1, and because the record does not establish the existence of undisclosed evidence properly discoverable under that statute, we conclude the prosecutor committed no discovery violation. We further conclude the midtrial revelation of the impeachment evidence at issue here did not deny defendant due process. Consequently, we affirm the judgment, albeit on reasoning different from that employed by the Court of Appeal.

---

[1] Section 1054.1 provides: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

Section 1054.3 provides: "The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial. [¶] (b) Any real evidence which the defendant intends to offer in evidence at the trial."

## FACTS AND PROCEDURAL POSTURE

The facts of the crimes of which defendant was convicted are of minimal relevance to the issue before us, and will be briefly summarized.[2] Defendant, in a stolen vehicle, drove two accomplices, Smith and Grant, to a car wash in Stockton, intending to shoot one Link Rhodes. Defendant parked behind a brick wall from which Smith fired several rifle shots in Rhodes's direction. Rhodes was unharmed, but shots killed the owner of an adjacent market and wounded three bystanders. While driving across town after the shooting, defendant stopped the car while Smith got out to point the rifle at a young boy, whose puppy Smith then stole.

Defendant admitted to police his involvement in the shootings, but claimed he had intended only to scare Rhodes. At trial, defendant testified he had used heroin habitually for two years, to and including the day of the shooting. Dr. Stephen Pittel, a psychologist, testified as an expert on the effects of heroin. Pittel opined defendant was a heroin addict whose abuse of the drug was related to a history of depression and possible brain damage. On cross-examination of Pittel, the following exchange occurred:

"Q. And you have given some of the research that you have conducted in this area, has part of your research included you actually taking certain drugs yourself? It has, hasn't it? Certain of these illegal drugs?

"A. Not as part of my research, no.

"Q. Have you been arrested for using drugs yourself?

"A. Yes, I have.

"Q. Okay. And that was back in 1990, correct, December?

"A. Yes.

"Q. And that was during a lunch break while you were testifying as an expert in a case, just like this case, right?

"A. Yes.

"Q. And in that case you were caught by some plain clothes officers, snorting cocaine in your Porsche, is that correct?

"A. That's correct.

---

[2]The facts are drawn from the opinion of the Court of Appeal.

"Q. Have you done any illegal drugs today?

"A. No.

"Q. And you are not under the influence at this time, is that right?

"A. No."

Defense counsel interposed no objection, and, after a brief redirect examination, a recess was taken. During the recess, defense counsel stated he was upset at not having been given notice the prosecutor planned to ask Pittel about his arrest. The prosecutor explained the information was proper cross-examination material, relevant to contradict a possible inference that Pittel might be affiliated with law enforcement and to show a pro-drug bias, but contended it did not fall within any of the categories of material discoverable under section 1054.1.

The trial court ruled the impeachment material relevant and admissible, and apparently concluded no authority required its discovery to the defense. The Court of Appeal disagreed, holding the prosecutor's failure to disclose the impeachment material both denied defendant the due process of law guaranteed him by the United States Constitution and violated the California criminal discovery statutes, section 1054 et seq. Finding the errors harmless, however, the Court of Appeal affirmed defendant's conviction. We granted the parties' petitions for review, limiting the issues to those relating to whether the prosecutor had the duty, under the applicable discovery principles, to disclose the impeachment evidence and, if so, whether the failure to do so prejudiced defendant.

## DISCUSSION

Proposition 115 amended the California Constitution and Penal Code in numerous respects, among them to authorize reciprocal discovery in criminal cases. Section 30, subdivision (c), added to article I of the California Constitution by Proposition 115, declares discovery to be "reciprocal" in criminal cases. ("In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process.") Chapter 10 of title 6 of part 2 of the Penal Code, section 1054 et seq., also added by Proposition 115, governs the scope and process of criminal discovery. Portions of this chapter relevant to the present case are section 1054, providing for interpretation of the chapter to give effect to certain specified purposes, and section 1054.1, providing for discovery to the defense. Additionally, section 1054.3 prescribes discovery to the prosecution in language functionally identical to that at issue here. (*Izazaga, supra,* 54 Cal.3d at pp. 364-365.)

*Izazaga*, *supra*, 54 Cal.3d 356, afforded this court a first opportunity to interpret and address the constitutionality of the statutory discovery provisions. We concluded the disclosure required of the defense pursuant to section 1054.3 does not violate the state and federal constitutional privileges against compelled self-incrimination (54 Cal.3d at pp. 365-372); the statutory obligations on the defense and the prosecution are sufficiently reciprocal to satisfy due process (*id.* at pp. 372-378); and the discovery statutes do not operate to deprive defendants of the effective assistance of counsel (*id.* at pp. 379-382).

In the course of our due process analysis in *Izazaga*, *supra*, 54 Cal.3d 356, we made certain observations concerning statutory language identical to that with which we are presently concerned.[3] "[T]he prosecution's right to discover defendant's witnesses under section 1054.3 is triggered by the *intent* of the defense to call that witness. Thus, the disclosure by the defense of its witnesses under section 1054.3 signals to the prosecution that the defense 'intends' to call those witnesses at trial." (54 Cal.3d at p. 375, italics in original.) The prosecution, by the same token, "intends" to call any of its witnesses who will be used in refutation of the defense witnesses if called; the same definition of "intends" applies to both parties. (*Ibid.*) We noted in *Izazaga*: "The Ohio Supreme Court defined the requirement that the prosecution disclose the witnesses it 'intends to call at trial' as including '*all witnesses it reasonably anticipates it is likely to call.* . . .' (*State* v. *Howard*, *supra*, 383 N.E.2d 912, 915.) We adopt this definition for purposes of interpreting the requirements of the new discovery chapter." (*Izazaga*, *supra*, at p. 376, fn. 11, italics added.)

█ Both defendant and the Attorney General contend that, by adding a "reasonably anticipates" gloss to the statutory "intends to call" language, *Izazaga* decreed the application of an objective, rather than a subjective, standard in determining whether a duty of disclosure arises under section 1054.1 and, by analogy, section 1054.3. Both sides then proceed to argue whether, under this objective test, the record establishes the prosecutor reasonably anticipated calling witnesses to substantiate his cross-examination of Pittel. We conclude, however, that whether or not section 1054.1 mandates an objective or a subjective assessment of counsel's intent is not the dispositive question in this case. Rather, because the record does not demonstrate the prosecutor failed to disclose any discoverable material, and

---

[3]Although *Izazaga*, *supra*, 54 Cal.3d 356, involved the requirements for disclosure by the defense under section 1054.3, rather than, as in this case, by the prosecution under section 1054.1, the relevant language of both sections is identical. Given the "manifest intent" of the electorate to create a reciprocal system of obligations (see *In re Littlefield* (1993) 5 Cal.4th 122, 133 [19 Cal.Rptr.2d 248, 851 P.2d 42]), we interpret this aspect of the two statutes identically.

the undisclosed impeachment information fell outside the scope of the discovery statute, no discovery violation appears under any interpretation of the intent requirement.

The Court of Appeal concluded it "can be reasonably inferred from the prosecutor's detailed examination of Pittel that the prosecutor was prepared to present witnesses or statements of witnesses concerning the arrest in the event Pittel denied it or failed to adequately confirm the circumstances. The prosecutor was not engaged in a foray into the unknown when he inquired about the arrest. Had he been there would have been nothing for him to disclose." (Fn. omitted.) Defendant reasons generally that if a trial attorney possesses information to impeach a witness, he or she expects that the attempt to elicit the information from the witness on cross-examination may go awry, and, to prepare for that possibility, the attorney ordinarily lines up a rebuttal witness to establish the impeachment material. Because this method of preparation for cross-examination is so typical, defendant suggests, the Court of Appeal's inference was sound.

The Attorney General, contrary to defendant, would not assume that a reasonable trial attorney, in preparing for cross-examination, invariably would line up a rebuttal witness to establish impeachment material. Instead, the Attorney General proposes a range of factors for trial courts to consider in assessing whether a party "reasonably anticipates" calling a witness. These would include the timing of the complaining party's disclosure of its own witnesses (i.e., whether the other party has had a reasonable opportunity to locate rebuttal witnesses); whether the desired impeachment evidence is material or merely collateral; whether counsel possesses prior inconsistent statements of the opposing party's witness, which statements would have to be proven (unless admitted) through the testimony of rebuttal witnesses; the availability of the rebuttal witness; the conduct of the parties, such as issuing a subpoena to secure the witness's presence at trial; the trial court's own experience; and relevant practices in the local jurisdiction.

The crux of the Attorney General's argument is not, however, that consideration of these factors yields the conclusion the prosecutor did not reasonably anticipate calling a witness to substantiate the facts concerning Pittel's drug use and related arrest. Rather, he urges this impeachment information was not discoverable under section 1054.1. The Attorney General observes defense counsel did not object below to any failure to disclose *witnesses*, but complained, rather, that the prosecutor "never gave me *that*

*information* [regarding Pittel's arrest] whatsoever."[4] Counsel's failure to object on the ground of nondisclosure of witnesses meant that no record was made regarding whether the prosecutor in fact had any witnesses he was prepared to call to substantiate the fact of the arrest. The Attorney General argues *the information itself*—i.e., the fact of the arrest and the underlying conduct—was nondiscoverable. As the prosecutor reasoned at trial, "It's cross-examination material. It doesn't come [under] Section 1054(b). It's not real evidence. It's not evidence of this crime. It's not exculpatory evidence. And if the defense counsel didn't know about it in this case, they should have. But it's not, that particular type of evidence, cross-examination evidence, knowledge of this type of evidence isn't something that's covered under Section 1054, and we are not required to disclose it." Because the record reflects only the nondiscoverable facts of Pittel's admitted drug use and arrest, and because defendant bears the burden of perfecting the appeal and showing error (*People* v. *Coley* (1997) 52 Cal.App.4th 964, 972 [60 Cal.Rptr.2d 870]), the Attorney General contends the Court of Appeal erred in inferring the undisclosed existence of a witness or witnesses who would have testified to those facts and in basing thereon its finding of a violation of section 1054.1.

We agree the Court of Appeal blurred the distinction between mere *information* and "witnesses" intended to be called at trial (§ 1054.1, subd. (a)) and, thus, unwarrantedly inferred the prosecutor intended to call a witness to substantiate the fact of Pittel's arrest. Information might take various forms other than witness testimony, such as a certified public record or prior recorded testimony of the witness sought to be impeached. On this record, we are unable to conclude the prosecutor violated section 1054.1, inasmuch as nothing properly before us reflects the existence of any undisclosed rebuttal witness or other evidence falling within the scope of that statute. ■ To establish on appeal a violation of section 1054.1, subdivision (a), in failing to disclose a witness, the record must affirmatively demonstrate that a specific witness or witnesses were known to and intended to be called by the prosecutor, but were undisclosed to the defense as required by the discovery chapter. Appellate courts should not engage in speculation about witnesses whose identity or existence is not demonstrated on the face of the record, as any other conclusion threatens to invade counsel's discretion whether to call a witness. (See *Sandeffer* v. *Superior Court* (1993) 18 Cal.App.4th 672, 678 [22 Cal.Rptr.2d 261].) An attorney

---

[4]The Attorney General acknowledges that, because he did not assert waiver in the Court of Appeal, he may not do so here. (Cal. Rules of Court, rule 29(b)(1); *In re M.S.* (1995) 10 Cal.4th 698, 727 & fn. 12 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) He assertedly raises the point only to show why the record does not reveal whether the prosecutor intended to call a witness to substantiate the fact of the arrest had Pittel denied it on cross-examination: The parties simply did not focus on that question at trial.

who believes opposing counsel has violated the discovery chapter by failing to provide discovery of an intended witness should, therefore, in order to preserve the claim for appeal, at a minimum make a record sufficient to enable the reviewing court to determine such a witness exists.

■ The rule of appellate review we announce today does not license counsel to temporize about his or her intentions in the face of clear indications on the record that counsel in fact intends to call a particular witness. For example, in *In re Littlefield, supra,* 5 Cal.4th 122, we held the trial court correctly determined that counsel reasonably anticipated calling a witness whom counsel's investigator had interviewed, who was present in the courtroom, and whom counsel asked the court to order to return on the day the case was trailed for trial. (*Id.* at p. 136.) Counsel's in-court conduct revealed his intention to be solid enough to warrant discovery of the witness's identity, despite his protestations of uncertainty. In contrast, here nothing in the record even hints at the existence of a witness.

Defendant argues section 1054 compels a different conclusion. That provision, setting forth the statutory purpose, states: "This chapter shall be interpreted to give effect to all of the following purposes: [¶] (a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery. [¶] (b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested. [¶] (c) To save court time in trial and avoid the necessity for frequent interruptions and postponements. [¶] (d) To protect victims and witnesses from danger, harassment, and undue delay of the proceedings. [¶] (e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States." Defendant seizes upon the Attorney General's acknowledgment that "[t]he ascertainment of truth is obviously enhanced when all parties to litigation are aware of the facts. Surprise witnesses, 'sandbagging,' and trial by ambush generally do little to elicit the truth." Complaining that here the defense was "sandbagged" and the truth diverted by the sensational account of Pittel's arrest, defendant urges section 1054, subdivision (a) is not served by the Attorney General's interpretation of section 1054.1. In further support of his position, defendant cites the Attorney General's statement in his brief, pertinent to section 1054, subdivision (d), that "disclosure helps to protect witnesses from harassment. Witnesses are better protected from harassment if they are well-prepared by the attorneys calling them, who in turn need all the information available. A witness who is likely to be asked sensitive questions on cross-examination can be prepared for them in advance, so that his or her testimony can still be effective, and the challenges to his or her character or credibility can be

handled rationally." Here, defendant may be understood to argue that, in contravention of the statutory policy, Pittel was left unprotected against the embarrassing revelation, on cross-examination, of his drug-related arrest.

Both parties correctly identify the general policies underlying the discovery chapter, but defendant overlooks a crucial limitation thereon: Section 1054, subdivision (e), precludes us from broadening the scope of discovery beyond that provided in the chapter or other express statutory provisions, or as mandated by the federal Constitution. Thus, if none of those authorities requires disclosure of a particular item of evidence, we are not at liberty to create a rule imposing such a duty. Defendant identifies no statute outside the discovery chapter having any bearing on this case, nor does he persuade us the federal Constitution mandates disclosure of the clearly nonexculpatory facts of Pittel's drug use and arrest. (See *Brady* v. *Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] [due process clause of Fourteenth Amendment requires prosecution to disclose to the defense any material, exculpatory evidence]; accord, *In re Sassounian* (1995) 9 Cal.4th 535, 543-544 [37 Cal.Rptr.2d 446, 887 P.2d 527].) Nor are the drug use and arrest encompassed within any of the categories of evidence set forth in section 1054.1, governing the prosecutor's discovery duties: The fact of Pittel's drug use and related arrest, per se, is not a witness's name or address (§ 1054.1, subd. (a)); it is not a statement by defendant (§ 1054.1, subd. (b)); it is not real evidence (§ 1054.1, subd. (c)); it is not a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial (§ 1054.1, subd. (d)); as noted, it is not exculpatory (§ 1054.1, subd. (e)); and it is not a written or recorded statement of the witness, or a report of a statement of the witness (§ 1054.1, subd. (f)). As the prosecutor correctly argued at trial, the information at issue here was not subject to discovery. On this alternate basis, as well, the Court of Appeal thus erred in finding the prosecutor violated section 1054.1.

■ Defendant argues that, although section 1054.1 does not literally encompass the information at issue here, its disclosure was required under the due process principles elaborated in *Wardius* v. *Oregon* (1973) 412 U.S. 470 [93 S.Ct. 2208, 37 L.Ed.2d 82] (*Wardius*). In that case, the high court held unconstitutional a discovery statute that required the defense to provide the names of alibi witnesses, but did not require the prosecution to disclose the names of rebuttal witnesses to the defense's alibi witnesses. The court reasoned that, although the due process clause "has little to say regarding the amount of discovery which the parties must be afforded, . . . it does speak to the balance of forces between the accused and his accuser." (*Id.* at p. 474 [93 S.Ct. at p. 2212].) The high court thus mandated reciprocity as an element of fundamental fairness in any criminal discovery scheme. Defendant reads *Wardius* as anticipating disclosure of "all the details that will be

used to refute an opposing party's witness." As defendant acknowledges, however, in *Izazaga* we rejected such a reading of *Wardius*. There we noted that, in *Williams* v. *Florida* (1970) 399 U.S. 78, 81-82 [90 S.Ct. 1893, 1896, 26 L.Ed.2d 446], the high court upheld, against a due process challenge, a notice-of-alibi rule requiring the parties to disclose only the identities of alibi witnesses and witnesses who would testify in rebuttal of the alibi. (See *Izazaga, supra,* 54 Cal.3d at p. 376.) We observed: "Reciprocity under the due process clause requires notice that the defendant will have the opportunity to discover the prosecutor's rebuttal witnesses (and their statements) following discovery of defense witnesses by the prosecutor. (*Wardius, supra,* 412 U.S. 470, 479 . . . .) Reciprocity requires a fair trade, defense witnesses for prosecution witnesses, and nothing more. We glean nothing from the Supreme Court's interpretations of the due process clause to lead us to conclude that reciprocity requires the prosecutor to disclose other evidence gathered in response to a compelled defense disclosure that may be used to refute the defendant's case, when the defense is not required to do the same following discovery of the prosecution's witnesses." (*Izazaga, supra,* at p. 377, fn. omitted.) Defendant urges this portion of our opinion in *Izazaga* was dictum because, given the pretrial posture of the case, a factual context for the conclusion was lacking. To the contrary, the quoted portion was necessary to our holding that Proposition 115's discovery chapter complies with the requirements of due process.

Certain language in *Hobbs* v. *Municipal Court* (1991) 233 Cal.App.3d 670 [284 Cal.Rptr. 655] (*Hobbs*) appears to support defendant's contention that the information the prosecutor possessed regarding Pittel's arrest was subject to discovery. *Hobbs*, filed eight days before our decision in *Izazaga, supra,* 54 Cal.3d 356, interpreted the discovery chapter, in light of the reciprocity required by federal due process, to mandate broad disclosure. Without consistently distinguishing between names (and statements) of witnesses and other types of information, the *Hobbs* court concluded the prosecutor has a duty "to disclose to the defense *new evidence* it obtains or possesses as a result of defense-supplied discovery." (*Hobbs, supra,* at p. 689, italics added.) The Court of Appeal in the present case relied on *Hobbs* in holding that the prosecution denied defendant due process in failing to disclose the fact of Pittel's arrest.

As noted, *Izazaga, supra,* 54 Cal.3d at page 377, rejected the argument reciprocity requires the prosecutor to disclose other evidence that may be used to refute the defendant's case, when the defense is not required to do the same following discovery of the prosecution's witnesses. To the extent *Hobbs, supra,* 233 Cal.App.3d 670, concluded due process *reciprocity* requirements expand the *scope* of discovery beyond the provisions of section 1054.1, it is disapproved.

Defendant strenuously argues that due process required discovery of the information regarding Pittel's arrest because defense counsel are in an inferior position, vis-à-vis the prosecution, when it comes to obtaining arrest information. This circumstance, he contends, demonstrates a lack of reciprocity of the sort condemned in *Wardius, supra,* 412 U.S. 470. Amicus curiae California Attorneys for Criminal Justice notes that information pertaining to crimes and arrests is maintained by governmental agencies in this state primarily for the use of the law enforcement community and only secondarily for use by others. (See generally, §§ 13020 [local law enforcement agencies to collect and report data as requested by Attorney General], 13150-13154 [required reports of arrest and charging data], 13201 [access to individual criminal record information only as authorized by law], 13300 [governing the provision of criminal history information to specified persons].)

The issue whether the putative imbalance in the parties' access to arrest records results in such a lack of reciprocity as to deny defendants due process was not argued below. Therefore, we need not address it. Were we to do so, we would conclude defendant's argument must fail at the threshold, because nothing in the record establishes the prosecutor in this case in fact obtained the information by invoking his statutory access to arrest records. Whatever statutory disparity in access to arrest records exists as between the defense and the prosecution generally, it has not been shown to have affected this case.

CONCLUSION ·

The judgment of the Court of Appeal is affirmed.

Geogre, C. J., Kennard, J., Baxter, J., and Chin, J., and Brown, J., concurred.

MOSK, J., Concurring.—Accepting for present purposes that Proposition 115's statutory discovery scheme is valid (but see *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 387-402 [285 Cal.Rptr. 231, 815 P.2d 304] (dis. opn. of Mosk, J.)), I concur in the opinion of the court.